| | |
|---|---|
| THE ESTATE OF JAMES R. FORTENBERRY, SR., THROUGH ADMINISTRATOR JAMES R. FORTENBERRY, JR. | SIXTH JUDICIAL DISTRICT COURT |
| AND | |
| JUNE P. FORTENBERRY AND | PARISH OF TENSAS |
| AND | |
| JAMES R. FORTENBERRY, JR. | |
| VERSUS NO. 24,765 A | STATE OF LOUISIANA |
| SYNGENTA CROP PROTECTION, LLC SYNGENTA AG, CHEVRON U.S.A. INC., CHEVRON PHILLIPS CHEMICAL COMPANY LP AND TENSAS FARM SERVICES, INC. | |

FILED: November 28, 2023 @ 11:49 a.m.   By: _____ DY CLERK

RECEIVED
DEC 05 2023
E.B.R. SHERIFF'S OFFICE

## PETITION FOR DAMAGES

The joint petition of **THE ESTATE OF JAMES R. FORTENBERRY, SR. THROUGH ADMINISTRATOR, JAMES R. FORTENBERRY, JR., JUNE P. FORTENBERRY,** and **JAMES R. FORTENBERRY, JR.** in proper person, all persons of the full age of majority, domiciled in the State of Louisiana, through undersigned counsel, respectfully represents the following:

1.

Made defendants herein are the following:

a. **SYNGENTA CROP PROTECTION, LLC,** a Delaware limited liability company with its principal place of business at 410 Swing Rd., Greensboro, North Carolina 27409. SYNGENTA CROP PROTECTION, LLC is a subsidiary of Defendant, SYNGENTA AG.

b. **SYNGENTA AG** is a foreign corporation organized and existing under the laws of Switzerland with its principal place of business at Rosentalstrasse 67, 4002 Basel, Switzerland.

c. **CHEVRON U.S.A. INC** is a Pennsylvania corporation with its principal place of business at 6001 Bollinger Canyon Rd., San Ramon, California 94583. CHEVRON USA is an indirect wholly owned subsidiary of CHEVRON CORPORATION.

d. **CHEVRON PHILLIPS CHEMICAL COMPANY LP** is a Delaware corporation with its principal place of business at 10001 Six Pines Dr., The Woodlands, Texas 77380. CHEVRON PLHILLIPS CHEMICAL COMPANY LP is a subsidiary of CHEVRON PHILLIPS CHEMICAL COMPANY LLC.


True and correct copy of original filed in the Tensas Parish Clerks Office
_____ 11-28-2023
Clerk                Date

1


EXHIBIT A

    e. **TENSAS FARM SERVICES, INC.,** is a Louisiana corporation authorized to do and doing business in the State of Louisiana with its principal place of business at 4718 Hwy. 65, St. Joseph, LA 71366.

2.

The named defendants are companies and/or successors in interest to companies that designed, manufactured, distributed, and sold Paraquat Products for use in Louisiana, and/or acted in concert with others who designed manufactured, distributed, and sold Paraquat Products for use in Louisiana.

3.

The above-named defendants are liable jointly and *in solido* unto Petitioner for such damages as are reasonable in the premises, together with legal interest from the date of judicial demand until paid, and for all costs of these proceedings for the following reasons, *to-wit*:

4.

Plaintiffs, allege **JAMES R. FORTENBERRY, SR.**, hereinafter referred to as "decedent" passed away ON November 28, 2022 from complications due to Parkinson's disease. Decedent was a resident of and domiciled in Tensas Parish, State of Louisiana on the date of his death. Decedent suffered from permanent neurological injuries consistent with Parkinson's disease caused by his exposure to Paraquat Products within the State of Louisiana generally, and specifically in the Parish of Tensas.

5.

Decedent used Defendants' Paraquat Products regularly and frequently over a period of many years from its entry into the market until his death as Decedent was a lifelong farmer. Decedent suffered from Parkinson's caused by many years of continuous, frequent and prolonged exposure to Defendants' Paraquat Products.

6.

Decedent was repeatedly exposed to and inhaled, ingested and/or absorbed paraquat while working as a farmer. Decedent mixed the chemicals in spray tanks for application in farm fields. After repeated and prolonged paraquat use and exposure, Decedent developed neurological injuries and was diagnosed with Parkinson's disease in 2018.

## COUNT 1 - Negligence

7.

Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of Paraquat into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

8.

Defendants failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Paraquat into interstate commerce in that Defendants knew or should have known that using Paraquat created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of PD, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as need for lifelong medical treatment, monitoring, and/or medications.

9.

The negligence by the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a. Manufacturing, producing, promoting, formulating, creating, and/or designing Paraquat without thoroughly testing it;

b. Failing to test Paraquat and/or failing to adequately, sufficiently, and properly test Paraquat;

c. Not conducting sufficient testing programs to determine whether or not Paraquat was safe for use; in that Defendants herein knew or should have known that Paraquat was unsafe and unfit for use by reason of the dangers to its users;

d. Not conducting sufficient testing programs and studies to determine Paraquat's neurodegenerative properties even after Defendants had knowledge that Paraquat is, was, or could be neurodegenerative;

e. Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Paraquat, and the propensity of these ingredients to render Paraquat toxic, increase the toxicity of Paraquat, whether these ingredients are

neurodegenerative, magnify the neurodegenerative properties of Paraquat, and whether or not "inert" ingredients and/or adjuvants were safe for use;

f. Negligently failing to adequately and correctly warn the Decedent, the public, the medical and agricultural professions, and the EPA of the dangers of Paraquat;

g. Negligently failing to petition the EPA to strengthen the warnings associated with Paraquat;

h. Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Paraquat;

i. Negligently marketing, advertising, and recommending the use of Paraquat without sufficient knowledge as to its dangerous propensities;

j. Negligently representing that Paraquat had equivalent safety and efficacy as other forms of herbicides;

k. Negligently designing Paraquat in a manner, which was dangerous to its users;

l. Negligently manufacturing Paraquat in a manner, which was dangerous to its users;

m. Negligently producing Paraquat in a manner, which was dangerous to its users;

n. Negligently formulating Paraquat in a manner, which was dangerous to its users;

o. Concealing information from the Decedent while knowing that Paraquat was unsafe, dangerous, and/or non-conforming with EPA regulations; and

p. Improperly concealing and/or misrepresenting information from the Decedent, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Paraquat compared to other forms of herbicides.

q. Negligently selling Paraquat with a false and misleading label.

10.

Defendants under-reported, underestimated, and downplayed the serious dangers of Paraquat. Defendants negligently and deceptively compared the safety risks and/or dangers of Paraquat with common everyday foods such as table salt, and other forms of herbicides. Even though Defendants knew or should have known that Paraquat caused, or could cause, unreasonably dangerous side effects, Defendants continued and continues to market, manufacture, distribute, and/or sell Paraquat to consumers, including the Decedent.

11.

Defendants knew or should have known that consumers such as the Decedent would foreseeably suffer injury due to Defendants' failure to exercise ordinary care, as set forth above.

4

As a result of the foregoing acts and omissions, the Decedent suffered from serious and dangerous side effects including, but not limited to, Parkinsons, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care. Further, Decedent suffered life-threatening Parkinsons, and severe personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

### COUNT 2: Louisiana Products Liability Act
### LA R.S. 9:2800.55 & 9:2800.56
### Manufacturing & Design Defect

12.

Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, testing, advertisement, supply, promotion, packaging, sale, and distribution of Paraquat including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

13.

Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of Paraquat because Defendants knew, or should have known, that exposure to Paraquat was linked to Parkinson's Disease, and was therefore not safe for use by consumers.

14.

Defendants continued to manufacture and market its product despite the knowledge, whether direct or ascertained with reasonable care, that Paraquat posed a serious risk of bodily harm to consumers. Defendants knew, or should have known, that consumers such as Decedent would foreseeably suffer injury because of Defendants' failure to exercise ordinary care. The characteristic of the product that renders it unreasonably dangerous existed at the time the product left the control of Defendants.

15.

Paraquat was expected to, and did, reach the intended consumers, handlers, and persons coming in contact with the product with no substantial change in the condition in which the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Defendants. Paraquat was manufactured, designed, marketed, labeled and sold in a defective condition, for use by Decedent and all other consumers of the product, making the product unreasonably dangerous.

16.

Paraquat as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and formulation in that when it left the hands of the manufacturers, suppliers, and distributors, the foreseeable risks of harm caused by the product exceeded the claimed benefits of the product. Paraquat, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and formulation because when it left the hands of Defendants, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

17.

At all times relevant to this action, Defendants knew and had reason to know that Paraquat was inherently defective and unreasonably dangerous as designed, formulated, and manufactured by Defendants, and when used and administered in the form manufactured and distributed by Defendants, and in the manner instructed by Defendants to be used by Decedent and other consumers.

18.

Decedent used Paraquat for the purpose intended by Defendants, and in a manner normally intended to be used. Defendants had a duty to design, create, and manufacture products that were reasonably safe and not unreasonably dangerous for their normal, common, and intended use. Defendants' product was not reasonably fit, suitable, or safe for its anticipated use, and safer, reasonable alternative designs existed and could have been utilized at the time the product left his control.

19.

In light of then-existing reasonably available scientific and technological knowledge, Defendants could have known of the design characteristic that caused the damage or the danger of such characteristic. Reasonably prudent manufacturers would not have placed the product in the stream of commerce with knowledge of these design flaws. Defendants designed, developed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk of serious harm to the health, safety, and well-being of Decedent and other consumers. Defendants is therefore liable for Decedent's injuries and damages sustained proximately caused by Decedent's use of the product, as Defendants' product

unreasonably dangerous, and all damage arose from the reasonably anticipated use of the product by the Decedent.

20.

Decedent could not, by the exercise of reasonable care, discover the defective condition of Defendants' product and/or perceive its defective dangers prior to its use. Paraquat was a substantial, proximate, and contributing factor in causing Decedent's injuries.

21.

As a proximate result of Defendants' acts and omissions and Decedent's use of Defendants' defective product, Decedent suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for his injuries described in this Complaint, including, but not limited to, the following:

a. Decedent required healthcare and services;

b. Decedent incurred medical and related expenses; and

c. Decedent suffered mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, and other losses and damages.

22.

Petitioner, **JUNE P. FORTENBERRY**, as widow of the decedent and as a result of the above-described disease and death of her husband, suffered the following damages:

　　a. Loss of future support;

　　b. Loss and deprivation of the companionship, security, love and affection of her husband;

　　c. Grief, mental anguish and distress from the loss of her husband;

　　d. Past and future Emotional distress;

　　e. Funeral expenses;

　　f. Medical expenses;

　　g. Other damages as will be shown at the trial on the merits.

23.

Petitioner, **JAMES R. FORTENBERRY, JR.**, as a child of the decedent and as a result of the above-described disease and death of his father, suffered the following damages:

　　a. Loss of future support;

　　b. Loss and deprivation of the companionship, security, love and affection of his father;

　　c. Grief, mental anguish and distress from the loss of his father;

  d. Past and future Emotional distress;

  e. Other damages as will be shown at the trial on the merits.

24.

As a result of the direct and vicarious acts of the named defendants that resulted in the death of **JAMES R. FORTENBERRY, SR.**, Petitioners assert and are entitled to receive all wrongful death and survival benefits allowable herein as provided by law.

**COUNT 3: Inadequate Warning (LA R.S. art 9:2800.57)**

25.

Because it is unlawful to sell a pesticide that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements. 7 U.S.C. § 136j(a)(l)(E), § 136a(f)(2), § 136a(f)(l). Paraquat was expected to, and did, reach the intended consumers, handlers, and persons not applying but exposed to the product in the course of its expected and foreseeable use, all with no substantial change in the condition in which the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Paraquat.

26.

Paraquat was manufactured, designed, marketed, labeled and sold in a defective condition, for use by Decedent and all other consumers of the product, making the product unreasonably dangerous. Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Paraquat and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of its product.

27.

Paraquat, as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, labeled, and distributed by Defendants, was defective due to the product's inadequate warnings and instructions. Defendants knew, or should have known, and adequately warned that its product created a risk of serious and dangerous side effects, including but not limited to, Parkinson's Disease. The product was under the exclusive control of Defendants and was unaccompanied by appropriate and adequate warnings regarding the risk of severe and permanent injuries associated with its use, including, but not limited to, the risk of developing

8

Parkinson's Disease. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer.

28.

Notwithstanding Defendants' knowledge of the defective condition of its product, Defendants failed to adequately warn the medical community and consumers of the product, including Decedent and his healthcare providers, of the dangers and risk of harm associated with the use of Paraquat. Defendants downplayed the serious and dangerous side effects of its product to encourage sales of the product, particularly without the use of protective equipment; consequently, Defendants placed its profits above its customers' safety.

29.

The product was defective when it left the possession of Defendants in that it contained insufficient warnings to alert Decedent to the dangerous risks associated with it, including the risk of Parkinson's Disease. Even though Defendants knew or should have known of the risks and reactions associated with their product, it still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product. Decedent used Paraquat as intended or in a reasonably foreseeable manner.

30.

Each Defendant individually, as a manufacturer of agricultural products, is held to the level of knowledge of an expert in the field and, further, Defendants had knowledge of the dangerous risks and side effects of its product. Decedent did not have the same knowledge as Defendants and no adequate warning was communicated to Decedent or any other consumers. Defendants had a continuing duty to warn consumers, including Decedent, of the dangers associated with its product, and by negligently and/or wantonly failing to adequately warn consumers of the dangers of the use of its product, Defendants breached its duty.

31.

Although Defendants knew, or should have known, of the defective nature of Paraquat it continued and continues to design, manufacture, market, and sell its product without providing adequate warnings and instructions concerning the use of its product so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Paraquat.

32.

As a direct and proximate result of Defendants' failure to adequately warn or other acts and omissions of Defendants described herein, Decedent suffered severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life. Defendants' failure to warn extended beyond the product's label and into other media available to Defendants, including but not limited to advertisements, person-to-person sales calls, medical journal articles, and medical conference presentations.

33.

Paraquat, upon information and belief, as manufactured by Defendants, was further defective due to inadequate post-market warnings or instructions because after Defendants knew, or should have known, of the risk of serious bodily harm from the use of Paraquat, Defendants failed to provide adequate warnings to consumers about the product, knowing the product could cause serious injury. Paraquat, upon information and belief, as manufactured and supplied by Defendants, was unreasonably dangerous because an adequate warning about the product had not been provided if, as at the time the product left Defendants' control, the product possessed the aforementioned characteristics that may cause damage users such as Decedent, and Defendants failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

34.

After Defendants had started shipping product that had left its control, Defendants acquired knowledge of characteristics of the product that might cause damage and the danger of such characteristic and is liable for damage caused by a subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product since that knowledge of the characteristics and its danger to users was acquired. A reasonably prudent manufacturer would have warned of these characteristics and its danger to users, and Defendants' failure to do so renders it liable for all damages caused by its subsequent failure to use reasonable care to provide adequate warning of the danger to Decedent and other users of the product.

**COUNT 4: LA R.S. 9:2800.58 Non-Conformity to Express Warranty**

35.

At all times relevant to this claim, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert were engaged in the business of designing, manufacturing,

distributing, and selling Paraquat Products and held themselves out as having knowledge or skill regarding Paraquat Products. At all times relevant to this claim, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert designed, manufactured, distributed, and sold Paraquat Products intending or expecting that it would be sold and used in Louisiana.

36.

At the time of each sale of Paraquat Products to which Decedent was exposed, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert impliedly warranted that it was of merchantable quality, including that it was fit for the ordinary purposes for which such goods were used, when it was not of merchantable quality. Defendants, through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisements, expressly warranted that Paraquat was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, Parkinson's Disease and was adequately tested and fit for its intended use.

37.

Paraquat, as manufactured and sold by Defendants, did not conform to these representations because it caused serious injury, including Parkinson's Disease, to consumers such as Decedent, when used as directed by the product label. Defendants breached their express warranties because their product was and is defective for its intended purpose. Decedent did rely on Defendants' express warranties regarding the safety and efficacy of their product in purchasing and using the product, and induced Decedent to use the product, and Decedent's damages were proximately caused by the untruthfulness of the express warranty. As a foreseeable, direct, and proximate result of the breach of the express warranties, Decedent suffered severe and permanent personal injuries, harm, and economic loss.

**WHEREFORE**, regarding each cause of action set forth above, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and causes of action as follows:

1. Awarding all general and special damages including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other noneconomic damages in an amount to be determined at trial of this action;

2. Awarding general and special damages to Plaintiffs for past and future damages, including, but not limited to, Decedent's pain and suffering and for severe and permanent personal injuries sustained by Decedent including health care costs and economic loss;

3. All recoverable damages related to wrongful death and survival action;

4. Awarding Punitive damages for defendants' conduct;

5. Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

6. Pre-judgment interest;

7. Post-judgment interest;

8. Awarding Plaintiff's reasonable attorneys' fees;

9. Awarding Plaintiff the costs of these proceedings; and

10. Such other and further relief as this Court deems just and proper.

Respectfully submitted:

By: _____
JAMES E. PAXTON
JOHN D. CRIGLER, JR.
BISHOP PAXTON CRIGLER & MOBERLEY
A Professional Law Corporation
124 Hancock Street
Post Office Box 97
Saint Joseph, Louisiana 71366
Phone: (318) 766-4892
Facsimile: (318) 766-3945

**AND**

**EDWARD P. ROWAN**
**AMANDA SUMERLIN**
TAYLOR MARTINO ROWAN
455 Saint Louis Street
Suite 2100
Mobile, AL 36602
Phone: (251) 433-3131

**PLEASE SERVE THE FOLLOWING ENTITIES/PERSONS**:

**SYNGENTA CROP PROTECTION, LLC**
*Through their Registered Agent*
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**SYNGENTA AG**
*Through their Registered Agent*
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**CHEVRON U.S.A. INC.**
*Through their Registered Agent*
The Prentice-Hall Corporation System, Inc.
501 Louisiana Avenue
Baton Rouge, LA 70802

**CHEVRON PHILLIPS CHEMICAL COMPANY LP**
*Through their Registered Agent*
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**TENSAS FARM SERVICES, INC.**
*Through their Registered Agent*
William McDonald
845 Florida St.
Newellton, LA 71357

## VERIFICATION



FILED
NOV 28 2023
@ 11:49 a.m.
Deputy Clerk

**STATE OF LOUISIANA**

**PARISH OF TENSAS**

     **BEFORE ME,** the undersigned authority, personally appeared, who, being first duly sworn, **THE ESTATE OF JAMES R. FORTENBERRY, SR. THROUGH ADMINISTRATOR, JAMES R. FORTENBERRY, JR.**, that he is a petitioner in the above and foregoing petition; that all the allegations of fact made in the petition are true and correct to the best of his knowledge, information, and belief.

                                                             _____
                                                             THE ESTATE OF
                                                             JAMES R. FORTENBERRY, SR.
                                                             By: JAMES R. FORTENBERRY, JR., Administrator

**SWORN TO AND SUBSCRIBED**
before me this __27__ day
of __Nov__, 2023.

_____
        NOTARY PUBLIC

JOHN D. CRIGLER, JR
LA BAR NO. 31118
COMM. EXP. AT DEATH

## **VERIFICATION**

**STATE OF LOUISIANA**

**PARISH OF TENSAS**

FILED
NOV 28 2023
@11:44 a.m.
[signature]
Deputy Clerk

**BEFORE ME,** the undersigned authority, personally appeared, who, being first duly sworn, **JUNE P. FORTENBERRY**, that she is a petitioner in the above and foregoing petition; that all the allegations of fact made in the petition are true and correct to the best of her knowledge, information, and belief.

_____
**JUNE P. FORTENBERRY**

**SWORN TO AND SUBSCRIBED**
before me this 27 day
of Nov, 2023.

_____
**NOTARY PUBLIC**

JOHN D. CRIGLER, JR
LA BAR NO. 31118
COMM. EXP. AT DEATH

Page 15

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF TENSAS**

FILED
NOV 28 2023
@ 11:49 a.m.
Deputy Clerk

**BEFORE ME,** the undersigned authority, personally appeared, who, being first duly sworn, **JAMES R. FORTENBERRY, JR.,** that he is a petitioner in the above and foregoing petition; that all the allegations of fact made in the petition are true and correct to the best of his knowledge, information, and belief.

_____
JAMES R. FORTENBERRY, JR.

**SWORN TO AND SUBSCRIBED**
before me this __27__ day
of __Nov__, 2023.

_____
NOTARY PUBLIC

JOHN D. CRIGLER, JR
LA BAR NO. 31118
COMM. EXP. AT DEATH

Page 16